# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

RANDY WARD,

    Plaintiff,

vs.

TEXTRON AVIATION INC.,

    Defendant.

Case No. 18-1128-JWB-GEB

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion for Protective Order and Memorandum in Support ("Motion") (**ECF No. 40**). After careful consideration of Defendant's Motion, Plaintiff's Memorandum in Opposition (ECF No. 45), and Defendant's Reply (ECF No. 54), the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion.

**I.**     **Background[1]**

This case is currently controlled by Plaintiff's Third Amended Complaint,[2] which alleges Defendant violated Plaintiff's rights under the Americans with Disabilities Act ("ADA"),[3] Family Medical Leave Act ("FMLA"),[4] and Kansas Act Against Discrimination ("KAAD").[5] Plaintiff was employed by Defendant from 1997 to March 15, 2015, when he

---

[1] Unless otherwise stated, this background information should not be construed as judicial findings or factual determinations.
[2] ECF No. 61.
[3] 42 U.S.C. § 12101.
[4] 29 U.S.C. § 2601.
[5] K.S.A. § 44-1001.

was terminated due to absences.[6] According to Plaintiff, his absences were directly connected to his Crohn's disease and ulcerative colitis, which he asserts are disabilities because they are medical conditions substantially limiting several major life activities and bodily functions.[7] Plaintiff asserts Defendant was fully aware of these facts, and rather than engaging in any interactive process with him concerning his disabilities or granting him reasonable accommodations, Defendant terminated him.[8]

Plaintiff also applied for three positions with Defendant in May of 2016, but claims he was refused because Defendant deemed him "ineligible for rehire."[9] Additionally, Plaintiff states he applied for a position with Strom Aviation, which had projects at Defendant's facility, but he was refused for that job as well because Defendant fired him for attendance issues.[10] Thus, Plaintiff alleges Defendant retaliated against him, terminated him and subsequently refused to hire him on the basis of his disabilities.[11] Defendant denies any wrongdoing.[12]

During the course of discovery, Plaintiff notified Defendant of his intent to depose Defendant's corporate representative pursuant to Fed. R. Civ. P. 30(b)(6).[13] As required by Rule 30(b)(6), Plaintiff listed the deposition topics in his notice.[14] The instant motion

---

[6] ECF No. 61, ¶¶ 7-8.
[7] *Id*. at ¶¶ 9-10, 21.
[8] *Id*. at ¶¶ 12-15.
[9] *Id.* at ¶ 16.
[10] *Id.* at ¶ 17.
[11] *Id.* at ¶¶ 21-23.
[12] *See generally* Answer (ECF No. 63).
[13] *See* Notice to Take Videotaped Deposition of Defendant Textron Aviation, Inc. Duces Tecum (ECF No. 30).
[14] *Id.* at pp. 2-5.

deals with topics 17 and 18,[15] and seeks a protective order from this Court forbidding Plaintiff from inquiring into those topics at the deposition.

## II. Defendant's Motion For Protective Order (ECF No. 40)

### A. Duty to Confer

As stated above, Plaintiff's Motion for Protective Order ("Motion") seeks a protective order forbidding Plaintiff from inquiring into topics 17 and 18 at an upcoming deposition. As a threshold matter, the Court first considers whether the parties have sufficiently conferred regarding Defendant's Motion, as is required by D. Kan. Rule 37.2.[16] A review of the briefings indicates counsel conferred via email and telephone in an effort to resolve Defendant's issues with Plaintiff's depositions topics.[17] In fact, the parties were able to resolve all of Defendant's objections expect for those regarding topics 17 and 18. As such, the Court is satisfied counsel have adequately conferred as required by the above-cited rule.

### B. Legal Standard

Under Rule 26(b)(1), a party may receive discovery "regarding any non-privileged matter that is relevant to any party's claim or defense . . . ." Relevancy is to be "construed

---

[15] Defendant's Motion indicated the parties also disagreed regarding topics 22 and 23, but subsequent briefing shows these topics are no longer in dispute. *See* ECF No. 45, p. 1 n.1; ECF No. 54, p. 3.
[16] This Local Rule provides the court will not entertain any motion to compel unless the attorney for the moving party has conferred or has made reasonable effort to confer with opposing counsel concerning the matter in dispute prior to the filing of the motion. A "reasonable effort to confer" means more than mailing or faxing a letter to the opposing party. It requires the parties in good faith converse, confer, compare views, consult, and deliberate, or in good faith attempt to do so. D. Kan. Rule 37.2
[17] *See* ECF No. 40 at pp. 2-3.

broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on" any party's claim or defense.[18] In other words, the court should permit a request for discovery unless "*it is clear* that the information sought can have *no possible* bearing" on a claim or defense.[19] Information need not be admissible in evidence to be discoverable, but the scope of discovery must be proportional to the needs of the case.[20] Relevancy determinations are generally made on a case-by-case basis.[21]

Additionally, under Fed. R. Civ. P. 26(c)(1), the "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Such an order may, among other things, forbid the requested discovery, specify the terms for the disclosure or discovery, or limit inquiry into certain matters.[22] The party seeking the protective order has the burden of demonstrating good cause for it.[23] To prove good cause, the moving party must offer "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."[24] Whether to enter a protective order lies within the court's discretion.[25]

---

[18] *In re EpiPen*, No. 17-MD-2785-DDC-TJJ, 2018 WL 1586426, at *2 (D. Kan. Apr. 2, 2018) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).
[19] *Gilbert v. Rare Moon Media, LLC*, No. 15-MC-217-CM, 2016 WL 141635, at *4 (D. Kan. Jan. 12, 2016) (quoting *Sheldon v. Vermonty*, 204 F.R.D. 679, 689–90 (D. Kan. 2001) (emphasis in original)).
[20] Fed. R. Civ. P. 26(b)(1).
[21] *In re EpiPen*, 2018 WL 1586426, at *2.
[22] Fed. R. Civ. P. 26(c)(1)(A), (B), and (D).
[23] *See, e.g., ICE Corp. v. Hamilton Sundstrand Corp.*, No. 05-4135-JAR, 2007 WL 1652056, at *3 (D. Kan. June 6, 2007).
[24] *Id.* (quoting *Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 534 (D. Kan. 2003)).
[25] *Id.*

## C. Discussion

### 1. Topic 17

Topic 17 seeks to inquire about the "things Defendant did in 2016, 2017, and 2018 to implement and comply with the February 18, 2016 Consent Decree, in *E.E.O.C. v. Cessna Aircraft Co.*, Case No. 2:15-cv-01166 (E.D. Wisc.), including specific policy changes, training, reports, correspondence, and the HR & legal personnel associated with this topic."[26] Before discussing the parties' arguments, a brief review of the above-referenced litigation and Consent Decree is necessary.

#### a. Consent Decree

On September 29, 2015, the Equal Employment Opportunity Commission ("EEOC") filed a Complaint against Cessna Aircraft Co. (now known as the Defendant here, Textron Aviation Inc.) in the United Stated District Court for the Eastern District of Wisconsin.[27] The Complaint was filed on behalf of William Cote ("Cote"), Clark Buehler ("Buehler"), and a class of similarly situated individuals, and alleged unlawful employment practices at Defendant's Wisconsin, Kansas, and other facilities in violation of the ADA.[28] In 2013, Defendant offered Cote and Buehler jobs conditioned on medical examinations.[29] The EEOC alleged Defendant illegally withdrew those offers based on medical disabilities discovered as a result of the medical examinations despite Cote's doctor stating he could

---

[26] ECF No. 30, pp. 3-4 at ¶ 17.
[27] *E.E.O.C. v. Cessna Aircraft Co.*, Case No. 2:15-cv-01166 (E.D. Wisc.), Complaint (ECF No. 1).
[28] *Id.* at p. 1, p. 3, ¶ 13.
[29] *Id.* at ¶¶ 14, 18.

work with no restrictions, and Buehler's perceived medical issue arising from a twelve-year old shoulder injury for which Defendant could not accommodate the "historic restrictions" placed on him by a previous employer.[30]

The EEOC further alleged Defendant failed to consider Cote for subsequent positions for which he applied on the basis of his disability, made impermissible medical inquiries into Cote's medical history after he had provided medical documentation he could work without restriction, used an unlawful qualification standard (achievement of maximum medical improvement before consideration of ADA protections), and retaliated against Cote by not hiring him after he contested Defendant's practices.[31] Thus, the EEOC asserted Defendant discriminated against Cote, Buehler, and a class of similarly situated individuals on the basis of disability.[32]

To resolve the case, Defendant, without admitting liability, entered into a two-year Consent Decree on February 18, 2016.[33] In that Consent Decree, Defendant agreed to (1) adopt, implement, and distribute a formal, written anti-discrimination policy covering specific ADA topics; (2) post this policy on its website and in its facilities, and provide it to employees who were extended conditional offers of employment; (3) provide annual training to Human Resources Department employees and Health Services employees involved in recruiting, hiring, and/or the reasonable accommodation process; (3) post ADA

---

[30] *Id.* at ¶¶ 15, 19.
[31] *Id.* at p. 1, p. 4, ¶¶ 15-17.
[32] *Id.* at ¶¶ 20-27.
[33] *E.E.O.C. v. Cessna Aircraft Co.*, Case No. 2:15-cv-01166 (E.D. Wisc.), Consent Decree (ECF No. 15).

specific notices and a notice about the Consent Decree on its facility bulletin boards to inform employees of the same; (4) maintain a record of individuals whose job offers were rescinded after post-offer, pre-employment physical examinations, and for every applicant whose job offer was rescinded based on a medical reason, report to the EEOC with specific information, including specific attempts to accommodate the individual and the outcome of those attempts; (5) pay monetary settlements to Cote and Buehler; and (6) notify the EEOC regarding accomplishment of the above items and submit annual certifications.[34]

### b. Parties' Arguments

Defendant argues inquiry into the Consent Decree is irrelevant because it arose out of litigation dealing with alleged illegal withdrawals of conditional employment offers following pre-employment medical examinations, which are not at issue this action. Here, Defendant states it terminated Plaintiff due to excessive absences, and while Plaintiff did apply for other jobs in 2016 after his termination, Plaintiff's applications were denied because he was deemed ineligible for rehire by Defendant. Thus, per Defendant, it had no reason to conduct a medical examination of Plaintiff or even make an offer of employment, which distinguishes this case from the EEOC litigation. Defendant also argues Plaintiff's request is overbroad and unduly burdensome because it would have to prepare a corporate representative to testify about every single aspect of the Consent Decree.

Plaintiff, on the other hand, argues discovery is broader than Defendant asserts. Plaintiff insists inquiry into the Consent Order is relevant because it relates to Defendant's

---

[34] *Id.*

employment practices around the time Plaintiff was terminated and subsequently applied for other jobs with Defendant. Plaintiff alleges Defendant terminated him based on his medical disabilities and then deemed him ineligible for rehire based on those same disabilities. Specifically, Plaintiff argues the materials Defendant submitted to the EEOC to demonstrate its compliance with the Consent Decree will reveal the company's specific practices towards applicants like him, i.e., those who have a history of medical issues.

### c. Analysis

As previously stated, discovery under the Federal Rules is broad. "[D]iscovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues."[35] This is especially true in employment discrimination cases, where discovery should not be narrowly circumscribed because an employer's general practices are relevant even when a plaintiff is asserting an individual claim of discrimination.[36]

Thus, the Court finds inquiry into the Consent Decree relevant because it addresses Defendant's employment practices (recruiting, hiring, and the reasonable accommodation process) regarding individuals with medical disabilities during the same time period Plaintiff was terminated and subsequently applied for other jobs with Defendant. Plaintiff alleges Defendant retaliated against him, terminated him and refused to hire him for other

---

[35] *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

[36] *See id.* (citing *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 343–44 (10th Cir. 1975) and *Scales v. J.C. Bradford & Co.*, 925 F.2d 901, 906 (6th Cir. 1991)); *Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 649, 653 (D. Kan. 2004) ("Information that may establish a pattern of discrimination is discoverable even when the action seeks only individual relief. When the motive or intent of a defendant employer is at issue, information concerning its conduct towards employees other than the plaintiff is relevant.") (internal citations omitted).

jobs based on his medical disabilities. Plaintiff also alleges Defendant refused to grant him any reasonable accommodations. This is similar to the plaintiffs in the EEOC litigation who allege Defendant refused to hire, retaliated, and failed to offer reasonable accommodations on the basis of medical disabilities. In this Court's view, the fact that the present case does not involve a conditional offer of employment premised on a medical examination is a distinction without a difference because allegations of disability discrimination are involved, and the Defendant agreed to enter into the Consent Decree to resolve those allegations. [37]

However, the Court agrees with Defendant that inquiry into the entire Consent Decree is irrelevant and overbroad. For example, the Court does not see how discovery regarding the posting of notices on facility bulletin boards or the settlement payments to Cote and Buehler would be relevant here. Therefore, after a review of the Consent Decree, the Court holds Plaintiff may inquire into (1) Section VI.a. of the Consent Decree, which relates to the anti-discrimination policy Defendant was to implement;[38] (2) Section VII.a., which relates to the training given to employees involved in the recruiting, hiring, and/or the reasonable accommodation process; (3) Section IX.a. and b., which deals with reporting

---

[37] *See, e.g., Moss v. Blue Cross & Blue Shield of Kansas, Inc.*, 241 F.R.D. 683, 692 (D. Kan. 2007) ("[A]s a general rule, '[o]ther claims of discrimination against a defendant are discoverable only if limited to the same form of discrimination . . . .'"; limiting interrogatory to other claims of FLMA violations against defendant because plaintiff only asserted FLMA claims) (internal citations omitted); *Swackhammer v. Sprint Corp.* PCS, 225 F.R.D. 658, 661-62 (D. Kan. 2004) (allowing plaintiff's request for information regarding similar incidents occurring three years before and two years after the alleged discriminatory termination); *Owens*, 221 F.R.D. at 653 (finding discovery requests seeking information on other charges of age and sex discrimination filed against defendant relevant).
[38] *See Mackey v. IBP, Inc.*, 167 F.R.D. 186, 196 (D. Kan. 1996) ("Corporate-wide information about the formation and setting of policy is generally relevant.").

9

information to the EEOC regarding individuals whose job offers were rescinded for medical reasons; and (4) Section IX.c., which relates to Defendant submitting an annual certificate of compliance to the EEOC, but any inquiry into this compliance must be limited to the information in (1)-(3) above. If any information regarding other applicants is produced, it should be disclosed pursuant to the Agreed Protective Order on file at ECF No. 11.

### 2. Topic 18

Topic 18 seeks information regarding Defendant's "interaction, if any, with the EEOC concerning Plaintiff's FOIA [Freedom of Information Act] request for documents concerning compliance with the February 18, 2016 Consent Decree, in *E.E.O.C. v. Cessna Aircraft Co.*, Case No. 2:15-cv-01166 (E.D. Wisc.)."[39] Defendant objects to this inquiry based on its above arguments the Consent Decree itself is irrelevant to this lawsuit.

However, despite making this objection, Defendant informed Plaintiff it is not aware of any communications with the EEOC involving his FOIA request.[40] In his response brief, Plaintiff did not specifically address Topic 18 or Defendant's statement it is not aware of any communications.[41] Therefore, the Court finds the issue regarding this inquiry moot as Defendant has provided a response. But, should Defendant discover information related to the inquiry, it should alert Plaintiff to this information based on the Court's above ruling that some aspects of the Consent Decree are relevant.

---

[39] ECF No. 30, ¶ 18.
[40] ECF No. 40, p. 4 n.1; ECF No. 54, p. 3, n.1.
[41] *See generally* ECF No. 45.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Protective Order and Memorandum in Support **(ECF No. 40)** is **GRANTED IN PART AND DENIED IN PART**. Plaintiff shall be allowed to depose Defendant's corporate representative regarding topic 17, but shall be limited to the subject matters discussed in Section II.C.1.c. above. Plaintiff shall not be allowed to depose Defendant's corporate representative regarding topic 18 because Defendant has informed Plaintiff no responsive communications exist. If, however, Defendant subsequently becomes aware of any responsive communications, it shall forward such information to Plaintiff.

**IT IS FUTHER ORDERED** that the discovery period is extended until **June 24, 2019** to allow completion of the 30(b)(6) deposition and other discovery as requested by the parties. The proposed pretrial order will be due by **July 8, 2019**. The pretrial conference will be held on **July 12, 2019 at 11:00 am**.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 10th day of May 2019.

s/ Gwynne E. Birzer
GWYNNE E. BIRZER
United States Magistrate Judge